IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

F. LEON WILSON,

      Petitioner,

      v.

WARDEN, PICKAWAY
CORRECTIONAL INSTITUTION,

      Respondent.

**CASE NO. 2:20-CV-1913**

**CHIEF JUDGE ALGENON L. MARBLEY**

**Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Traverse, and the exhibits of the parties.  For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED**.

## I.     FACTS AND PROCEDURAL HISTORY

Petitioner challenges his convictions after a jury trial in the Delaware County Court of Common Pleas on three counts of gross sexual imposition with specifications.  The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶2} On July 17, 2015, the Delaware County Grand Jury indicted Wilson on three counts of gross sexual imposition in violation of R.C. 2907.05. Counts 1 and 2 pertained to E.C., four years old, and Count 3 pertained to K.P., seven years old. Each count included a school safety zone specification (R.C. 2941.143).
>
> The charges arose from separate incidents between Wilson and E.C. and Wilson and K.P. while at school. Wilson was their chess teacher.
>
> {¶3} On April 9, 2015, E.C. told her parents her chess teacher touched her, demonstrating the touch by placing her hand on top of her clothes between her legs and moving her hand up and down. E.C. told her forensic interviewer the same story.

{¶4} Following Wilson's arrest, which was publicized in the press, K.P.'s father, asked K.P. if anything had happened to her since she had been a student in Wilson's chess class in February and March 2015. K.P. stated it happened once. K.P. told her forensic interviewer that Wilson asked her for permission to touch her vagina and when she gave him permission, he rubbed her vagina over her clothing.

{¶5} On August 31, 2015, Wilson filed a motion to sever Counts 1 and 2 from Count 3. A hearing was held on September 21, 2015. By judgment entry filed September 24, 2015, the trial court denied the motion.

{¶6} On December 5, 2015, Wilson filed a motion for competency hearings of E.C. and K.P. prior to either being permitted to testify. A hearing was held on January 4, 2016. The state indicated it would not be calling E.C. as a witness. The trial court conducted an examination of K.P. and determined K.P. to be competent to testify.

{¶7} On January 4, 2016, Wilson filed a motion to compel confrontation, objecting to the playing of E.C.'s videotaped forensic interview during the trial. A hearing was held on February 11, 2016.

{¶8} On January 21, 2016, Wilson filed a supplemental motion on the issuance of severance. By judgment entry filed February 22, 2016, the trial court again denied the motion to sever, and denied Wilson's motion to compel confrontation, finding E.C.'s out-of-court statements were admissible as pertaining to medical diagnosis or treatment.

{¶9} A jury trial commenced on February 23, 2016, but the jury could not reach a verdict on any of the counts and a mistrial was declared. Wilson did not object to the trial court's supplemental instruction referred to as a *Howard* charge. *See State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989), paragraph two of the syllabus. Wilson did not object to the declaration of a mistrial because the jury was deadlocked. Thereafter, a different judge was assigned to the case.

{¶10} On May 27, 2016, Wilson reasserted his motion to exclude E.C.'s videotaped interview, claiming it violated his right to confrontation and it did not fit the medical diagnosis or treatment exception to the hearsay rule. Again, the trial court denied the motion.

{¶11} A second jury trial commenced on June 6, 2016. The jury found appellant guilty of Counts 1 and 3, and not guilty of Count 2. The jury also found the offenses were committed in a school safety zone.

{¶12} On June 24, 2016, Wilson filed a motion for judgment of acquittal and motion for new trial. By judgment entry filed July 21, 2016, the trial court denied the motions.
{¶13} By judgment entry filed August 2, 2016, the trial court sentenced Wilson to an aggregate term of eight and one-half years in prison. This Court affirmed

Wilson's convictions and sentence. *State v. Wilson*, 5th Dist. Delaware No. 16-CAA-08-0035, 2017-Ohio-5724, 93 N.E.3d 1282 ["*Wilson, I*"]. The Ohio Supreme Court declined to review Wilson's case. *State v. Wilson*, 151 Ohio St.3d 1511, 2018-Ohio-365, 90 N.E.3d 950.

{¶14} On October 2, 2017, Wilson filed an application to reopen his direct appeal alleging that his Appellate counsel was ineffective for failing to raise a number of specific arguments relating to trial counsel's alleged deficiencies. On January 19, 2018, this Court denied Wilson's application to reopen his direct appeal. On February 21, 2018, the Ohio Supreme Court declined to accept jurisdiction in this matter. *State v. Wilson*, 152 Ohio St.3d 1467, 2018-Ohio-1795, 97 N.E. 3d 502.

{¶15} On September 13, 2017, Wilson filed an application for post-conviction DNA testing pursuant to R.C. 2953.72. Wilson requested testing of "[t]he three school-uniform jumpers that law enforcement seized from the home of alleged victim E.C. on April 9, 2015."

{¶16} In an entry filed April 3, 2018, the trial court denied the application finding that Wilson failed to establish that the requested DNA evidence would be outcome determinative.

Assignments of Error

{¶17} "I. THE TRIAL COURT'S SUMMARY DENIAL OF DEFENDANT-APPELLANT'S APPLICATION FOR DNA TESTING WAS AN ABUSE OF DISCRETION."

*State v. Wilson*, 5th Dist. No. 18CAA040034, 2018 WL 6721959, at *1-2 (Ohio Ct. App. Dec. 20, 2018). On December 20, 2018, the appellate court affirmed the trial court's judgment. *Id*.

Petitioner apparently did not file an appeal.

{¶15} On September 13, 2017, Wilson filed a Petition for Post-Conviction Relief ["PCR"]. In support of the motion, Wilson attached affidavits purportedly from several jurors who participated in his first trial that resulted in a mistrial. Additionally, he submitted affidavits from his trial counsels and their private investigators.

{¶16} In an entry filed April 3, 2018, the trial court denied the petition for post-conviction relief.

Assignments of Error

{¶17} "I. THE DISMISSAL OF THE PETITION FOR POST-CONVICTION RELIEF WITHOUT A HEARING VIOLATED R.C. 2953.21(D) AND

DEPRIVED DEFENDANT-APPELLANT OF HIS RIGHT TO MEANINGFUL REVIEW OF HIS CONSTITUTIONAL CLAIMS FOR RELIEF.

18} "II. POST-CONVICTION COUNSEL'S FAILURE TO RAISE ADDITIONAL INSTANCES OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (RELATING TO A DEFECTIVE INDICTMENT, THE FIRST JURY'S NOT GUILTY VERDICT, AND DOUBLE JEOPARDY) DEPRIVED DEFENDANT-APPELLANT OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."

*State v. Wilson,* 5th Dist. No. 18CAA040035, 2018 WL 6721310, at *2 (Ohio Ct. App. Dec. 20, 2018). On April 17, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Wilson,* 155 Ohio St.3d 1422 (Ohio 2019).

On October 2, 2017, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B), asserting that his appellate counsel improperly failed to raise on appeal a claim challenging the indictment's failure to state "that the offense in Count 3 occurred in Franklin County[]" and violated "his constitutional right to a trial by a jury from the county in which the offense had been committed"; that his convictions for gross sexual imposition against E.C. and K.P. were against the manifest weight of the evidence (ECF No. 7-1, PAGEID # 832); that the "jury heard inconsistent statements from E.C., and [that] unidentified male DNA was found in her underwear the same week the allegations were made against him" and "K.P.'s testimony was also inconsistent, and [] her testimony was manipulated[]"; that he was "denied a fair trial based on twelve cumulative errors"; that he was denied the effective assistance of trial counsel based on his attorney's failure to object to admission of hearsay statements by E.C. and K.P.; and that appellate counsel improperly failed to file a motion for reconsideration of the appellate court's plain error review. (PAGEID # 833-34.) On January 19, 2018, the appellate court denied the Rule 26(B) application. (*Judgment Entry*, ECF No. 7-1, PAGEID # 830.) On May 9, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (PAGEID # 854.)

4

On April 15, 2020, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He asserts that he was denied the effective assistance of trial and appellate counsel (claims one and two); that his re-trial on the charge of gross sexual imposition relating to K.P. violated the Double Jeopardy Clause (claim three); and that the admission and playback of E.C.'s recorded forensic interview violated the Confrontation Clause (claim four).  It is the Respondent's position that Petitioner's claims are procedurally defaulted or without merit.

## II.     PROCEDURAL DEFAULT

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus.  28 U.S.C. § 2254(a).  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).  Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas."  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process.

This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so.  As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*).  First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  *Maupin*, 785 F.2d at 138.  Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause

6

sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged

constitutional error.  *Id*.

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner

must show that "some objective factor external to the defense impeded counsel's efforts to

comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Constitutionally ineffective counsel may constitute cause to excuse a procedural default.

*Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  In order to constitute cause, an ineffective

assistance of counsel claim generally must "'be presented to the state courts as an independent

claim before it may be used to establish cause for a procedural default.'"  *Edwards*, 529 U.S. at

452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)).  That is because, before counsel's

ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the

Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted."

*Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).  Or, if procedurally defaulted,

petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the

ineffective-assistance claim itself."  *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000).  The

Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default
> doctrine in *Coleman*: "In the absence of the independent and adequate state ground
> doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion
> requirement by defaulting their federal claims in state court. The independent and
> adequate state ground doctrine ensures that the States' interest in correcting their
> own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct.
> 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and
> procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct.
> 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to
> "'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838,
> 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting *id*., at 853, 526 U.S. 838, 119 S.Ct. 1728,
> 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion
> requirement, we said, would be utterly defeated if the prisoner were able to obtain
> federal habeas review simply by "'letting the time run'" so that state remedies were

no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

### III.   APPLICATION

#### a.   Ineffective Assistance of Trial Counsel

Petitioner asserts that his attorney acted in a constitutionally ineffective manner by failing to perform as follows:

1.   Request the trial judge to poll the jurors in the first trial and conduct an inquiry as to their verdict on Count 3, the GSP charge relating to K.P.;

2.   File a motion to dismiss Count 3 on Double Jeopardy grounds prior to the retrial;

3.   Re-file the motion to sever the GSI counts relating to E.C. from the GSI count relating to K.P. prior to the commencement of the second trial;

4.   Challenge the identical or "carbon copy" language of Counts 1 and 2 of the indictment on the federal and state constitutional grounds;

5.   Object to the recorded forensic interviews of the two alleged minor victims E.C. and K.P. on Confrontation Clause and Hearsay rule grounds, and/or affirmatively

agreeing to the admission of the recorded interviews without redaction of statements unrelated to medical diagnosis and treatment;

6. Object to the accusatory statements made by E.C. and K.P. to their parents on hearsay grounds;

7. Place before the jury the fact that E.C. was incompetent and had no memory of Petitioner or the accusation of sexual contact;

8. Object to an instruction that the prosecution and the defense did not want E.C. to testify;

9. Present arguments to the jury regarding K.P.'s grudge against Petitioner and her motive to lie;

10. Impeach K.P.'s trial testimony with contradictory statements in her forensic interview;

11. Retain a DNA expert to testify regarding the ramifications of the inadequate DNA testing by the prosecution; and,

12. Object to K.P.'s witness-stand valediction and the judge's expression of appreciation to her.

Petitioner waived his claim of ineffective assistance of counsel based on his attorney's failure to retain a DNA expert (sub-claim 11) by failing to raise this same claim in the Ohio Supreme Court. (*See Memorandum in Support of Jurisdiction*, ECF No. 7-1, PAGEID # 724.) Petitioner waived the remainder of his claims of ineffective assistance of trial counsel, with the exception of sub-claim 7 (placing before the jury that E.C. was incompetent and had no memory of the charges) by failing to raise these same issues on direct appeal, where he had the representation of new counsel. He may now no longer do so under Ohio's doctrine of res judicata. "It is well-settled that '[c]laims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of res judicata.'" *Teitelbaum v. Turner*, No. 2:17-cv-583, 2018 WL 2046456, at *15 (S.D. Ohio May 2, 2018) (quoting *Hill v. Mitchell*, No. 1:98-cv-452, 2006 WL 2807017, at *43 (S.D. Ohio Sept. 27, 2006) (citing *State v.*

*Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967))).  Petitioner violated the res judicata rule set forth in *Perry* when he failed to raise his claims on direct appeal and in the Ohio Supreme Court. Consequently, the first prong of the *Maupin* test is satisfied.  Ohio courts have consistently relied upon the doctrine of res judicata to refuse to review the merits of procedurally barred claims. *See, e.g., State v. Cole*, 2 Ohio St.3d 112 (1982).  The Sixth Circuit has held that Ohio's doctrine of res judicata is an independent and adequate ground for denying federal habeas relief.  *See, e.g., Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).  Turning to *Maupin's* independence prong, under the circumstances presented here, Ohio's doctrine of res judicata does not rely on or otherwise implicate federal law.  Petitioner attempted to raise various on-the-record claims of ineffective assistance of trial counsel in post-conviction proceedings; however, the appellate court explicitly refused to address those claims as barred by application of res judicata.  *See State v. Wilson*, 5th Dist. No. 18CAA040035, 2018 WL 6721310, at *11-19 (Ohio Ct. App. Dec. 20, 2018).

Petitioner argues that the state appellate court addressed the merits of his claim of ineffective assistance of trial counsel based on his attorney's failure to request that the jury be reconvened after declaration of a mistrial and polled as to the verdict on Count 3 and the failure to file a motion to dismiss Count 3 on Double Jeopardy grounds prior to the retrial (sub-claims 1 and 2).  The record does not support this argument.  To the contrary, the record indicates that Petitioner did not raise these same issues of ineffective assistance of counsel in post-conviction

proceedings.  (ECF No. 7-1, PAGEID # 406, 441-472.)[1]  Instead, he asserted, based on the

submission of statements from four jurors and the affidavit of a private investigator, that the jury

in the first trial had voted to acquit him on Count 3 and Double Jeopardy barred his re-trial on

that charge.  (ECF No. 7-1, PAGEID # 419-427.)   Petitioner raises this same issue in habeas

corpus ground 3.  That issue is addressed below.  He did not, however, assert a claim of

ineffective assistance of counsel on this basis.

Petitioner also argues that res judicata does not bar review of his claims, because the state

courts inconsistently and arbitrarily or improperly applied res judicata when his claims required

some off-the-record development.  (*Reply*, ECF No. 17, PAGEID # 2772-75.) Petitioner further

maintains the appellate court applied "circular reasoning" in rejecting his claim of ineffective

assistance of appellate counsel in Rule 26(B) proceedings.  (PAGEID # 2775-76.)  Again,

however, the record does not support these arguments.

The state appellate court explicitly noted that Petitioner had submitted no off-the-record

evidence in support of various claims of ineffective assistance of trial counsel in post conviction

proceedings:

a. Failing to object to hearsay statements made by EC and KP.

{¶62} Wilson contends that his trial attorneys were ineffective because they did not
object to hearsay statements made by E.C. and K.P. to their parents. [Appellant's
Brief at 20].

{¶63} Initially we note that evidence offered dehors the record must be more than
evidence which was in existence and available to the appellant at the time of the
trial and which could and should have been submitted at trial if the appellant wished
to make use of it. Simply put, the purpose of post-conviction proceedings is not to
afford one convicted of a crime a chance to retry his case.

---

[1] Petitioner later asserted on appeal a claim of ineffective assistance of his post conviction
attorney for failing to raise these claims in his petition for post conviction relief.  (ECF NO. 7-1,
PAGEID # 607.)

{¶64} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding [,] except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial [that] resulted in that judgment of conviction or on an appeal from that judgment." (Emphasis sic.) *State v. Perry*, 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. Thus, a common pleas court may apply the doctrine of res judicata to dismiss a post-conviction claim, when the claim presents a matter that could fairly have been determined without resort to evidence dehors the record. *Id.; State v. Cole*, 2 Ohio St.3d 112, 114, 2 OBR 661, 443 N.E.2d 169 (1982).

{¶65} In the case at bar, Wilson presents no evidence outside the record to support his claim. Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record.

{¶66} As Wilson was able to raise and fully litigate this issue on direct appeal, this Court concludes Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Perry*, 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646 (2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶67} The petition, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

b.  Statements made to the forensic interviewer.

{¶68} Wilson next contends that his trial counsel rendered ineffective assistance by failing to object to the children's statements to the forensic interviewer. [Appellant's Brief at 20-21].

{¶69} In *Wilson I* this Court noted,

In his May 27, 2016 motion in limine to exclude videotape evidence of E.C., appellant sought to exclude E.C.'s forensic interview with the Children's Advocacy Center within Nationwide Children's Hospital. Appellant argued the interviewers "were acting as if they were part of the police department, yet holding on to the veneer of being physician's assistants in order to get the video testimony of the alleged victim admitted into evidence under Evid.R. 803(4)." Prior to jury selection, the trial court entertained argument on the motion. Appellee presented redacted copies of the videotaped interviews of both E.C. and K.P., editing out possible

12

statements not covered under a hearsay exception. T. at 43–44. The trial court denied appellant's motion in limine without comment. T. at 56. The next day, the parties agreed both videotaped interviews could be played in their entirety in exchange for appellant being able to play portions of his own videotaped interview. T. at 688–690.

*Wilson I*, 2017-Ohio-5724, ¶ 37, 93 N.E.3d 1282 (emphasis added). In reviewing this claim under the plain-error doctrine, we held,

> Upon review, we find the statements made by E.C. to Ms. Combs and by K.P. to Ms. Wilkinson were for the purposes of medical diagnosis or treatment, and the trial court did not err in admitting the videotapes under Evid.R. 803(4). We find the playing of E.C.'s videotape did not violate appellant's rights under the Confrontation Clause.

*Wilson I*, 2017-Ohio-5724, ¶ 41, 93 N.E.3d 1282 (emphasis added).

{¶70} In the case at bar, Wilson presents no evidence outside the record to support his claim. Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record.

{¶71} As Wilson was able to raise and fully litigate this issue on direct appeal, this Court concludes Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Perry*, 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646 (2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶72} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

c.   Failure to impeach.

{¶73} Wilson next argues that trial counsel was ineffective because he did not impeach K.P. with contradictory statements she made regarding the number of times she was inappropriately touched. [Appellant's Brief at 21-22].

{¶74} In the case at bar, Wilson presents no evidence outside the record to support his claim. Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record.

{¶75} As Wilson was able to raise and fully litigate this issue on direct appeal, this Court concludes Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Perry*, 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646 (2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶76} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

\*\*\*

e.   Trial court's expression of appreciation.

{¶84} Wilson next argues that his trial attorney's failure to object to KP's "witness-stand valediction and the judge's expression of appreciation to KP. The trial record discloses that after KP was excused from the witness stand, she thanked Price for 'helping my mom' and 'paying for my therapist's appointments.' The trial judge told her, '[t]hank you for saying that.' (Tr. 1294) The judge's findings of fact do not address this omission by counsel. A hearing is needed to determine whether defense counsel's failure to object was objectively reasonable." [Appellant's Brief at 22].

{¶85} In the case at bar, Wilson presents no evidence outside the record to support his claim. Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record. Accordingly, this claim is barred by res judicata.

{¶86} As Wilson was able to raise and fully litigate this issue on direct appeal, this Court concludes that Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Perry*, 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646 (2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶87} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

\*\*\*

14

g. Failure to show animosity of KP toward Wilson.

{¶97} Wilson asserts that defense counsel rendered deficient performance by failing to argue to the jury that KP had a grudge against Wilson for naming another girl as captain of the chess team and letting her take home a tournament trophy.

{¶98} In the case at bar, Wilson presents no evidence outside the record other than his own affidavit to support his claim. As self-serving testimony, the trial court could give little or no weight to Wilson's affidavit. *See, State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999);*State v. Kapper*, 5 Ohio St.3d 36, 38, 448 N.E.2d 823 (1983) (letter or affidavit from the court, prosecutors, or defense counsel alleging a defect in the plea process might be sufficient to warrant a hearing, although defendant's own affidavit alleging same defect would not, because the former are not self-serving declarations);*State v. Elmore*, 5th Dist. No. 2005-CA-32, 2005-Ohio-5940, ¶ 109.

{¶99} In any event, Wilson has failed to demonstrate that had the evidence been presented, the result of his trial would have been different. *See, State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, 848N.E.2d 810, ¶ 108.

{¶100} This Court concludes that Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Perry*, 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646 (2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶101} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun*, 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

\*\*\*

{¶107} Based on the foregoing, Wilson's [] Assignment of Error is overruled in its entirety.

\*\*\*

1. Trial Counsel's Failure to Challenge the Identical Wording of Counts 1 and 2 of the Indictment on Federal and State Constitutional Grounds is barred by res judicata.

15

{¶109} Wilson argues that his indictment was defective because the counts are framed in identical terms. [Appellant's Brief at 27].

{¶110} To the extent that appellant argues the indictment was defective, he waived that argument by failing to raise it before trial. See Crim. R. 12(C)(2); *State v. Schultz*, 96 Ohio St. 114, 117 N.E. 30 (1917); *State v. Blalock*, 8th Dist. Cuyahoga Nos. 80419 and Cuyahoga Nos. 80420, 2002-Ohio-4580; *State v. Kenney* (May 10, 2000), 5th Dist. Holmes No. CA93-480A, 2000 WL 699673; *State v. Avery*, 126 Ohio App.3d 36, 709 N.E.2d 875 (3rd Dist. 1998); *State v. Biros*, 78 Ohio St.3d 426, 436, 678 N.E.2d 891, 901-902 (1997), citing *State v. Joseph*, 73 Ohio St. 3d 450, 455, 653 N.E.2d 285, 290-291 (1995); and *State v. Mills*, 62 Ohio St. 3d 357, 363, 582 N.E.2d 972, 980 (1992) (Under Crim. R. 12(B) and 12(G), alleged defects in an indictment must be asserted before trial or they are waived"); *see, also, State v. Williams*, 51 Ohio St. 2d 112, 117, 98, 101, 364 N.E.2d 1364 (1977), 1367-1368, *death penalty vacated*, 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156 (1977).

{¶111} In addition, in the case at bar, in response to two questions, the jury was instructed that Count One of the Indictment concerned touching the vagina of E.C. and Count Two of the Indictment concerned touching the buttocks of E.C. 10T., Jury trial June 10, 2016 at 1617-1625. Wilsons two retained trial attorneys did not object to this instruction. *Id*. In addition, the jury acquitted Wilson of Count 2 of the Indictment. Wilson has failed to sustain his burden of demonstrating that the error affected his substantial rights.

{¶112} In the case at bar, Wilson presents no evidence outside the record to support his claim. Accordingly, the claim presents a matter that could fairly have been determined without resort to evidence dehors the record. Accordingly, this claim is barred by res judicata.

{¶113} As Wilson was able to raise and fully litigate this issue on direct appeal, this Court concludes that Wilson has failed to sustain his burden of demonstrating that an error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Perry*, 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646 (2004). We find no manifest miscarriage of justice occurred in this case. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶114} The petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that appellant set forth sufficient operative facts to establish substantive grounds for relief. *Calhoun,* 86 Ohio St.3d at paragraph two of the syllabus; see R.C. 2953.21(C).

*State v. Wilson*, 2018 WL 6721310, at *11-19.

Thus, Petitioner has waived all of his claims of the denial of the effective assistance of counsel, with the exception of sub-claim 7 (involving E.C.'s incompetence and lack of memory).

### b. Confrontation Clause

Petitioner asserts that the admission and playback of E.C.'s recorded forensic interview violated the Confrontation Clause. The state appellate court reviewed this claim for plain error only, due to Petitioner's failure to object:

> [A]ppellant claims he was denied his right to confront witnesses when the trial court admitted the videotaped interview of E.C. when E.C. was unavailable for cross-examination, and the trial court erred in admitting the videotaped interviews of E.C. and K.P. under Evid.R. 803(4), thereby denying his right to a fair trial. We disagree.
>
> {¶ 34} In his appellate brief at 17 and 21, appellant [] acknowledges because his trial attorneys did not object to the playing of the videotapes during the trial, this issue is reviewed under a plain error standard. Crim.R. 52(B); *Long, supra*.
>
> {¶ 35} The Sixth Amendment's Confrontation Clause provides, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court explained, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." However, statements made for the purpose of medical diagnosis and treatment are nontestimonial. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944. Further, "[s]tatements by very young children will rarely, if ever, implicate the Confrontation Clause. Few preschool students understand the details of our criminal justice system." *Ohio v. Clark*, 576 U.S. ——, 135 S.Ct. 2173, 2182, 192 L.Ed.2d 306 (2015).
>
> {¶ 36} Appellee sought to introduce E.C.'s videotaped interview under Evid.R. 803(4) which states:
>
> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
>> (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

17

{¶ 37} In his May 27, 2016 motion in limine to exclude videotape evidence of E.C., appellant sought to exclude E.C.'s forensic interview with the Children's Advocacy Center within Nationwide Children's Hospital. Appellant argued the interviewers "were acting as if they were part of the police department, yet holding on to the veneer of being physician's assistants in order to get the video testimony of the alleged victim admitted into evidence under Evid.R. 803(4)." Prior to jury selection, the trial court entertained argument on the motion. Appellee presented redacted copies of the videotaped interviews of both E.C. and K.P., editing out possible statements not covered under a hearsay exception. T. at 43–44. The trial court denied appellant's motion in limine without comment. T. at 56. The next day, the parties agreed both videotaped interviews could be played in their entirety in exchange for appellant being able to play portions of his own videotaped interview. T. at 688–690.

{¶ 38} Appellee argues because of this agreement, appellant is precluded from arguing the issue under the invited error doctrine. Under this doctrine, it is well settled that "a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." *State ex rel. Smith v. O'Connor*, 71 Ohio St.3d 660, 663, 646 N.E.2d 1115 (1995). *See Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145 (1943), paragraph one of the syllabus. However, appellant made the agreement after the trial court had ruled the day before that the videotapes were admissible. We find appellant invited error on any hearsay statements within the videotapes because he agreed to play them in their entirety, but he did not waive his right to contest their admission under the plain error doctrine.

{¶ 39} E.C. was interviewed by Emily Combs, a forensic interviewer, who interviews children when there are concerns of abuse. T. at 705, 720–721; State's Exhibit 20. Ms. Combs explained the interviews are recorded, and the purpose of the interview is to give the child the opportunity to tell someone what has happened to him/her. T. at 712. She asks non-leading, open-ended questions so the child will tell her "whatever they want in their own words so I don't give them words to tell me." T. at 706, 717. She explained, "we do those in the hospital setting for medical diagnosis and treatment, and so I always communicate with the physician or the nurse practitioner about what the child has told me and that kinda guides their medical exam of the child." T. at 712, 756. She admitted that police officers are part of the team and will watch the live feed of the interviews. *Id.* The interview is the same whether police are present or not. T. at 713. After the interview, the child undergoes a medical exam. T. at 714. Jonathan Thackeray, M.D., conducted a medical exam on E.C. T. at 529–530. He stated he always talks to the forensic interviewer before conducting the exam. T. at 546.

{¶ 40} K.P. was interviewed by Kerri Wilkinson who is also a forensic interviewer. T. at 793, 806–807; State's Exhibit 21. She testified to the same procedures as used by Ms. Combs. T. at 796–797, 800–802, 806, 810. Following the interview, Gail Horner, Ph.D. and SANE nurse, conducted a medical exam on K.P. T. at 582–584.

18

> She stated she always meets with the forensic interviewer "immediately after the interview so that we can discuss everything that the child disclosed to them during the interview" to guide her in her examination. T. at 570–571. K.P. was declared competent to testify on January 5, 2016, and the child did in fact testify during the trial and was subject to cross-examination. T. at 1246–1294.

> {¶ 41} Upon review, we find the statements made by E.C. to Ms. Combs and by K.P. to Ms. Wilkinson were for the purposes of medical diagnosis or treatment, and the trial court did not err in admitting the videotapes under Evid.R. 803(4). We find the playing of E.C.'s videotape did not violate appellant's rights under the Confrontation Clause.

*State v. Wilson*, 93 N.E. 3d at 1289-90.

> Petitioner procedurally defaulted this claim by failing to object.

> Ohio's contemporaneous objection rule, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), requires the parties to preserve errors for appeal by calling them to the attention of the trial court at a time when the error could be avoided or corrected. It has been held time and again that the rule is an adequate and independent state ground of decision sufficient to justify the procedural default of a federal constitutional claim. *See, e.g., Hand v. Houk*, No. 14-3148, 2017 WL 3947732, at *18 (6th Cir. Sept. 8, 2017) ("We have previously held that an Ohio court's enforcement of the contemporaneous-objection rule is an independent and adequate state ground of decision sufficient to bar habeas relief.") (internal citation omitted); *Wogenstahl v. Mitchell,* 668 F.3d 307, 335 (6th Cir. 2012) ("Failure to adhere to the firmly-established Ohio contemporaneous objection rule is an independent and adequate state ground of decision."), citing *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011) ("Ohio's contemporaneous objection rule is a firmly established procedural rule that is an adequate and independent state ground to foreclose federal relief."); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010) (same).

*Twyford v. Bradshaw*, No. 2:03-cv-906, 2017 4280955, at *19 (S.D. Ohio Sept. 27, 2017). "The Sixth Circuit has held that Ohio's 'contemporaneous objection rule is an adequate and independent state ground barring federal habeas review, *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), and plain-error review is not inconsistent with the procedural default.'" *Plott v. Turner*, No. 3:18-cv-2372, 2018 WL 3271629, at *10 (N.D. Ohio May 29, 2020) (citing *Awkal v. Mitchell,* 613 F.3d 629, 648 649 (6th Cir. 2010)).  A state court's plain error review does not constitute a waiver of the procedural default.  *See Mason v. Brunsman*, 483 F. App'x 122, 130 31

(6th Cir. 2012).  Moreover, an appellate court's alternative ruling on the merits does not remove the procedural default.  *Conley v. Warden, Chillicothe Corr. Inst*., 505 F. App'x 501, 506 (6th Cir. 2012) (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998)).

### c.  Cause and Prejudice

Petitioner thereby has waived all of his claims of ineffective assistance of trial counsel, with the exception of sub-claim 7, as well as his claim that his convictions violate the Confrontation Clause.  He may still obtain review of these claims on the merits, if he establishes cause for his procedural defaults, as well as actual prejudice from the alleged constitutional violations.  "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default."  *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)).  A petitioner's pro se status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied*, 543 U.S. 989 (2004).  Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him."  *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom. Hartman v. Bobby*, 554 U.S. 924 (2008).  Further, attorney error in proceedings wherein there is no right to counsel – such as in the filing of a motion for a discretionary appeal with the Ohio Supreme Court – cannot serve as cause for a procedural default.  *See McClain v. Kelly*, 631 F. App'x 422, 429 (6th Cir. 2015) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (The right to counsel extends to the first appeal of right and no further).

In claim two, and as cause for his procedural defaults, Petitioner asserts that his appellate counsel was ineffective.  (*Reply*, ECF No. 17, PAGEID # 2775-76.)  "An ineffective assistance of counsel claim may serve as the cause to excuse procedural default, but only where the claim itself has not been procedurally defaulted, or, if procedurally defaulted, cause and prejudice exist for the default."  *Gross v. Warden, Lebanon Corr. Inst*., 426 F. App'x 349, 360 (6th Cir. 2011) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)).  Here, Petitioner has waived all of his claims of ineffective assistance of appellate counsel, except for his attorney's failure to raise on appeal a claim that trial counsel improperly failed to object to hearsay statements by the alleged victims to parents and forensic interviewers; failed to impeach K.P.'s testimony with prior inconsistent statements K.P. made to the forensic interviewer; and failed to identify K.P.'s bias or grudge against Petitioner.  These are the sole issues Petitioner raised in the Ohio Supreme Court. (*Memorandum in Support of Jurisdiction*, ECF No. 7-1, PAGEID # 843.)  *See Williams v. Mitchell*, 792 F.3d 606. 613 (6th Cir. 2015) (to avoid a procedural default, the petitioner must exhaust all state-court remedies by fairly presenting the claim to the state court of appeals and state supreme court) (citations omitted); *Hemphill v. Hudson*, No. 1:09-cv-009, 2009 WL 1107890, at *2 (N.D. Ohio Apr. 23, 2009) (claim of ineffective assistance of appellate counsel procedurally defaulted where the Petitioner failed to raise the claim in the Ohio Supreme Court).  This Court will address these issues here, in order to determine whether Petitioner has established cause for his procedural defaults.

The state appellate court rejected Petitioner's claim of ineffective assistance of appellate counsel in relevant part as follows:

> [A]ppellant argues he was deprived of effective assistance of counsel.  Many of appellant's arguments center on the "hearsay" statements of E.C. and K.P.  The statements were admissible as excited utterances, present sense impressions, or made for the purposes of medical diagnosis and treatment.

> Failing to object to hearsay statements that are admissible under hearsay exceptions does not constitute deficient performance by trial counsel.  Many of the complained of deficiencies involve trial strategy; that does not mean defense counsel was deficient. . . .  We do not find any of appellant's allegations of deficiency to rise to the level of "reasonable probability that, were it not for counsel's errors, the result of the trial counsel have been different."  *Bradley*, supra.  We do not find any evidence of prejudice regarding this issue.

(ECF No. 7-1, PAGEID # 833-34.)

This Court conducts a *de novo* review of Petitioner's claim of ineffective assistance of counsel when determining whether Petitioner can establish cause for a procedural default.  *See Hively v. Warden*, 2018 WL 722864, at *7 (S.D. Ohio Feb. 5, 2018) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236-37 (6th Cir. 2009) ("An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not.")

### 1. Ineffective Assistance of Counsel Standard

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "Only a right to 'effective assistance of counsel' serves the guarantee."  *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted).  The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). Strickland requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result.  *Id*. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S. Ct. 680 (2013).  A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'"  *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (internal quotation marks omitted) (quoting

*Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)).  To make such a showing, a petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687.  "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). . . . Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* citing *Wilson* . . . . The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D. Ohio March 6, 2013).  Factors to be considered in determining whether a defendant has been denied the effective assistance of appellate counsel include:

> (1) Were the omitted issues "significant and obvious"?

> (2) Was there arguably contrary authority on the omitted issues?

> (3) Were the omitted issues clearly stronger than those presented?

> (4) Were the omitted issues objected to at trial?

> (5) Were the trial court's rulings subject to deference on appeal?

> (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

> (7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427–28 (6th Cir. 1999) (citations omitted).

## 2. Application

As discussed, the trial court denied Petitioner's pre-trial motion to exclude the statements from the alleged victims to forensic examiners, and the state appellate court found that the trial court properly admitted the complained of statements under Ohio law.  That decision does not contravene federal law.

> The Supreme Court has not addressed whether a statement is testimonial when it is made for the dual purpose of obtaining medical care and providing evidence for later criminal prosecution. Nothing in *Crawford* or subsequent Supreme Court cases interpreting the meaning of "testimonial," including the cases cited by *Dorsey*, compels the conclusion that statements made to a sexual assault nurse examiner for both medical and legal purposes are testimonial.

*Dorsey v. Cook*, 677 F. App'x 265, 267 (6th Cir. 2017) (citing *White v. Woodall*, ⸺ U.S. ⸺, 134 S.Ct. 1697, 1706–07 (2014); *Tapke v. Brunsman*, 565 F. App'x 430, 436 (6th Cir. 2014). Additionally, defense counsel obtained the prosecution's agreement to admission of Petitioner's exculpatory statement to police.  Thus, defense counsel did not violate *Strickland* by failing to object to the admission of the children's statements to forensic interviewers.

The record likewise does not reflect that defense counsel acted in a constitutionally unreasonable manner by failing to object to the alleged victims' statements to parents, and failing to impeach K.P. with her prior inconsistent statements or make an argument that K.P. had a grudge against the Petitioner and motive to lie because Petitioner had named another girl as the

captain of the chess team and let her take home a tournament trophy.  (*See Traverse*, ECF NO. 17, PAGEID # 2796.)  Again, the state appellate court concluded that such statements were properly admitted under Ohio law.  This Court defers to that determination.  *See Greer v. Mitchell,* 264 F.3d 663, 675 (6 th Cir. 2001) ("Generally, a federal habeas court. . . should not second guess a state court's decision concerning matters of state law.") (citation omitted). Further, Petitioner cannot establish prejudice from the testimony regarding the alleged victims' statements to their parents in view of the admission of the audiotaped statements  with forensic interviewers and K.P.'s trial testimony.[2]  K.P. did not disclose the sexual abuse allegations against Petitioner until after being questioned by her parents.  Nothing in the record indicates that defense counsel could have established that K.P. made up the allegations against Petitioner because he had named another girl as captain of the chess team.  Her parents testified that she did not want to get Petitioner in trouble and did not blame him.  (*Transcript*, ECF No. 9-13, PAGEID # 2270-71.)  During cross-examination, K.P. testified that she told the forensic interviewer that Petitioner had inappropriately touched her twice on two different days. (*Transcript,* ECF No. 9-13, PAGEID # 2354-55.)  Defense counsel cross-examined her on the issue.  (PAGEID # 2355-57. )[3]  K.P. later stated, on cross-examination, that she did not tell the

---

[2] E.C.'s father testified that, in April 2015, "out of the blue," E.C. told him that her chess teacher "put his hand on her lap. . . . because he said it feels good."  (*Transcript,* ECF No. 9-8, PAGEID # 1482.)  E.C. did not appear to be scared or concerned at all.  (PAGEID # 1483.)  When his wife asked E.C. where Petitioner had touched her, E.C. put her hands between her legs. . . . [and] moved her hand up and down between her legs."  (PAGEID # 1483-84.)  They decided that they needed to call the police.  (PAGEID # 1485.)  E.C.'s mother testified similarly.  (PAGEID # 1548-1561.)  K.P.'s parents asked K.P. whether Petitioner had ever touched her inappropriately after they learned about the allegations made by E.C.  K.P. "curled up into a ball" and said "it only happened once."  (*Transcript*, ECF No. 9-13, PAGEID # 2268-69.)  K.P. used an oven mitt indicating she had been touched in her vagina area.  K.P. said it was only one time and he had her permission.  K.P. did not want to get him into trouble.  (PAGEID # 2270.)
[3]        Q. Tell me about the other time.
            A. they were mainly the same.

forensic interviewer about the second time. (PAGEID # 2357.) The inconsistency between K.P.'s initial statements to her parents and her recorded statement to the forensic interviewer, indicating that it had only happened once, and her trial testimony, indicating that it had happened twice, was already apparent from the record and brought out during cross-examination. Defense counsel argued in closing that K.P.'s testimony was not credible based in part on her inconsistent statements. (*Transcript*, ECF No. 9-14, PAGEID # 2619-20.) Petitioner cannot establish prejudice from counsel's decision not to cross-examine K.P. further on the issue.

Petitioner has failed to establish cause and prejudice for his procedural defaults.

## IV. STANDARD OF REVIEW

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state–court rulings,

---

\*\*\*

Q. Okay. What were the differences?
A. I'll have to get back to you on that.
Q. Okay. Did anybody ever talk to you about the second time that this happened?
A. No. Mainly just, like, the first time.
Q. Okay. So no one ever asked you any questions about the second time?
A. No, because they were mainly the same[.]

(*Transcript*, ECF No. 9-13, PAGEID # 2355-56.)

and demands that state-court decisions be given the benefit of the doubt.") (internal quotation

marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a

federal court from granting habeas relief with respect to a "claim that was adjudicated on the

merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of

the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the
> state court applies a rule different from the governing law set forth in our cases, or
> if it decides a case differently than we have done on a set of materially
> indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152
> L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct.
> 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from the Supreme Court's decisions but unreasonably
> applies the law or bases its decision on an unreasonable determination of the facts,
> in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100,
> 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct.
> 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 798, (2019).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable"

merely because the federal habeas court would have reached a different conclusion.  *Wood v.*

*Allen*, 558 U.S. 290, 301 (2010).  Instead, a state court's factual findings are "only unreasonable

where they are 'rebutted by clear and convincing evidence' and do not have support in the

record." *Moritz v. Woods*, No. 16-1504, 2017 WL 2241814, at *5 (6th Cir. May 22, 2017)

(quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks

omitted).  Moreover, "[f]actual determinations by state courts are presumed correct absent clear

and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits

in a state court and based on a factual determination will not be overturned on factual grounds

unless objectively unreasonable in light of the evidence presented in the state-court

proceeding[.]"  *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v.*

*Cockrell*, 537 U.S. 322, 340 (2003)) ("*Miller–El I*").

The burden of satisfying AEDPA's standards rests with the petitioner.  *See Cullen v.*

*Pinholster,* 563 U.S. 170, 181 (2011).

## V.  DISCUSSION

### a.  Double Jeopardy

Petitioner asserts that his re-trial on Count 3 violates the Double Jeopardy Clause,

because the jury voted to acquit him on this charge but misunderstood the jury instructions,

resulting in a guilty verdict.  Petitioner first presented this claim in his petition for post

conviction relief.  The trial court, however, denied the claim as barred under Ohio's doctrine of

res judicata:

> On June 24, 2016, after the second trial but before sentencing, Defendant filed a
> motion for acquittal claiming that the Jury in the first trial had voted to acquit on
> Count 3.  On July 21, 2016, Judge Wilson denied the motion on the merits.
>
> Defendant did not challenge that ruling on direct appeal.
>
> ***
>
> Double Jeopardy claims are barred now because of res judicata principles.
>
> Ohio Criminal Rule 12 and case law require a double jeopardy claim to be filed as
> a pretrial motion before the second trial unless good cause is shown for a later filing.

28

No good cause is shown in this case.

***

Ohio case law prohibits litigants from using information from jurors after trial to impeach [a] decision of a jury in open court.

Ohio Evidence Rule 606 precludes the Court from considering the information included in Defendant's affidavits filed with the Petition for Post-Conviction Relief.

(*Decision and Journal Entry of Judgment,* ECF No. 7-1, PAGEID # 561-62.)

On appeal, Petitioner asserted that the trial court had improperly denied this claim without conducting an evidentiary hearing.  (ECF No. 7-1, PAGEID # 580.)  The appellate court affirmed the trial court's refusal to consider the post-conviction affidavits submitted by Petitioner in support of this claim under Ohio's aliunde rule and Evidence Rule 606(B).  *State v. Wilson,* 2018 WL 6721310, at *3-8.  It is the Respondent's position that Petitioner has thereby committed a procedural default.  Even assuming, *arguendo* however, that Petitioner preserved this claim for review in these proceedings, it does not, in any event, provide him a basis for relief.

"[T]he Sixth Circuit has explained that where an affidavit does not allege that a jury was influenced by 'extraneous information, testimony is properly excluded, and 'there is no 'constitutional impediment to enforcing' Ohio's aliunde rule[.]"  *Herring v. Lazaroff*, No. 4:16-cv-2626, 2018 WL 8838770, at *18 (N.D. Ohio Sept. 19, 2018) (citing  *Hoffner v. Bradshaw*, 622 F.3d 487, 501 (6th Cir. 2010) (quoting *Brown v. Bradshaw*, 531 F.3d 433, 438 (6th Cir. 2008)).  Petitioner does not allege that the jury was influenced by any extraneous information.  (ECF No. 7-1, PAGEID # 482-484.)  Accordingly, the Ohio courts properly excluded consideration of the affidavits in support of Petitioner's claim that his re-trial on Count 3 violated

29

the Double Jeopardy Clause because the jury intended to acquit him but misunderstood the jury instructions. *See Hoffner*, 622 F.3d at 501. Petitioner refers to no Supreme Court precedent holding that application of the aliunde rule under these circumstances contravenes or constitutes an unreasonable application of federal law. *See Shuster v. Warden, Chillicothe Corr. Inst*., No. 2:18-cv-211, 2018 WL 5777350, at *11 (S.D. Ohio Nov. 2, 2018). Thus, Petitioner can establish no basis for relief.

Claim three is without merit.

### b. Ineffective Assistance of Trial Counsel

Petitioner asserts that he was denied the effective assistance of trial counsel, because his attorney failed to present evidence showing that E.C. was incompetent and had no memory of the incident charged. The state appellate court rejected this claim as follows:

> [A]ppellant claims he was denied the effective assistance of counsel because his trial attorneys failed to present evidence that E.C. could not remember him or the incident. We disagree.
>
> {¶ 21} Appellee did not call E.C. to testify at trial. Appellant argues following the trial, he learned appellee failed to disclose that E.C. could not remember him or the incident. This was discovered via appellee's September 15, 2016 memorandum contra defendant's motion to stay execution of sentence wherein appellee acknowledged, "[w]hile E.C. now has virtually no memory of Appellant, her parents have been devastated by this offense." Subsequently, appellant's trial counsel, Eric Willison, filed an affidavit averring during a jury instruction meeting with the trial court, appellee informed "defense counsel for the first time, that E.C. was not called because she could not remember the alleged events, and that because of this the prosecution decided not to call her." Willison aff. at ¶ 20, attached to Appellant's December 2, 2016 Motion to Reconsider Denial of Motion to Stay Execution of Sentence as Exhibit A.1 During the sentencing hearing, appellee stated, "it's true that and fortunate that [E.] is so young she doesn't remember the details of what happened at this point." July 29, 2016 T. at 20.
>
> ***
>
> {¶ 25} During the competency hearing held on January 4, 2016, appellee informed the trial court it would not be calling E.C., age five at the time, as a witness, stating, "[h]er ability to recall events from during the summer even is very limited, and

getting her to sit still for more than about five to ten minutes at a time is rather—rather difficult." January 4, 2016 T. at 3. The indictment filed July 17, 2015 indicated the incident with E.C. occurred between March 31, 2015, through April 7, 2015 when she was four years old. Defense counsel was put on notice in January 2016 that E.C.'s recall ability was limited. This was nine months after the dates in the indictment. If five year old E.C. had limited recall after nine months, it was not a surprise that she could not recall appellant and/or the incident sixteen months (sentencing) or seventeen months (memorandum contra) after the dates listed in the indictment. . . .

{¶ 26} Appellant argues [] his trial counsel was ineffective by failing to present evidence of E.C.'s lack of memory to the jury.

{¶ 27} The standard to establish ineffective assistance of counsel is set out in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. Appellant must establish the following:

2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶ 28} Appellant argues his trial counsel should have presented evidence on E.C.'s lack of memory by either "calling E.C. to testify, calling a witness to whom E.C. made statements concerning her lack of memory, or a stipulation." Appellant's Brief at 14.

{¶ 29} Whether to call a five year old witness to the stand in a sexual abuse case is a strategic choice of counsel. Based on her limited recall ability, her testimony could have gone either way. As argued by appellee, placing a five year old child on the witness stand to answer questions sexual in nature could have very well alienated the jury. Whether to call a certain witness at trial falls within the realm of trial tactics and generally will not constitute ineffective assistance of counsel. *See State v. Coulter,* 75 Ohio App.3d 219, 598 N.E.2d 1324 (1992). This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." *State v. Post,* 32 Ohio St.3d 380, 388, 513 N.E.2d 754 (1987). *See State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶ 30} Appellant does not list any potential witnesses that could have been called "to whom E.C. made statements concerning her lack of memory." Defense counsel

cannot be expected to call witnesses that do not exist. Appellant also does not suggest what kind of "stipulation" defense counsel should have offered.

{¶ 31} Upon review, we do not find any deficiency by defense counsel and therefore no prejudice to appellant.

*State v. Wilson*, 93 N.E.3d at 1287-88.

Petitioner now argues that his attorney should have procured a stipulation or jury instruction advising the jury that E.C. no longer had any memory of the charges at issue and complains that defense counsel instead agreed to a jury instruction indicating that the lawyers had agreed that E.C. would not be called as a witness.  (*Reply*, ECF No. 17, PAGEID # 2794-96.)  Petitioner did not make these same arguments in the Ohio Court of Appeals.  As a result, he may not do so here.  *See Sheppard v. Bagley*, 604 F.Supp.2d 1003, 1011 (6th Cir. 2009) ("[A] petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory and set of facts, and then presents the issue to the federal courts under a different legal theory or a different set of facts. Rather, he must present to the federal court essentially the same facts and legal theories that were considered and rejected by the state courts."); *Twyford v. Bradshaw*, 2:03cv906, 2017 WL 4280955, at *20 (S.D. Ohio Sept. 27, 2017) (A petitioner must present to the state courts both the legal theory and the factual basis of any federal claim that he seeks to present in order to preserve that claim for federal habeas corpus review) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Gray v. Netherland,* 518 U.S. 152, 162-63 (1996); *Pillette v. Foltz,* 824 F.2d 494, 496 (6th Cir. 1987)).

Moreover, the state appellate court's decision rejecting Petitioner's claim of ineffective assistance of counsel based on his attorney's decision not to call E.C. as a witness in order to establish E.C.'s lack of memory of the events at issue does not contravene or involve an unreasonable application of *Strickland*.  The United States Supreme Court has cautioned federal

habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." *Harrington*, 562 U.S. at 105.  The Court observed that while "'[s]urmounting *Strickland's* high bar is never . . . easy.' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) and citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). The Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted).  Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The cross-examination of witnesses and decision on whether to call defense witnesses to establish unreliability of testimony generally falls within the area of tactics or strategy that courts typically do not attempt to second guess.  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation omitted).  Re-calling the E.C. to establish that she had limited recall of the events at issue likely would have done little to assist the Petitioner, particularly in view of the child's tender age, and may have alienated the jury and provoked sympathy for the victim.  Counsel's decision not to do so did not involve an unreasonable trial strategy under these circumstances. *See Guysinger v.*

*Warden, Noble Corr. Inst*., No. 2:19-cv-774, 2019 WL 6310060, at *9 (S.D. Ohio Nov. 25, 2019).

## VI.    DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**
